IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JANE DOE | § | |
| | § | |
| v. | § | Civil Action No. 3:15-cv-00173-P |
| | § | |
| CLEBURNE INDEPENDENT | § | |
| SCHOOL DISTRICT | § | **JURY DEMANDED** |

### PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW Plaintiff, Jane Doe ("JANE"), and files this First Amended complaint, complaining of Defendant, Cleburne Independent School District ("CISD"), and would respectfully show as follows:

### I. INTRODUCTION

1.1     This is a sexual assault and molestation action for money damages arising from violations of JANE's federal civil rights committed by Defendant.

### II. PARTIES

2.1     JANE is an individual residing in Johnson County, Texas. The complaint was originally filed by JOHN DOE as next friend of JANE DOE however since JANE has reached the age of majority and there is no claim being made for medical bills by JOHN DOE, JANE no longer requires a next friend to represent her interests.

2.2     CISD is a state chartered organization whose purpose is to govern the affairs of the public schools in Johnson County, Texas. CISD is responsible for the policies, practices, and customs of its school district, as well as the hiring, training, supervision, control, and discipline of its teachers, principals, and coaches. CISD is and was the employer of the school personnel

named herein as individual Defendant. CISD may be served with process by serving its attorney of record, Mr. Joshua A. Skinner at Fanning Harper Martinson Brandt & Kutchin, P.C., Two Energy Square, 4849 Greenville Ave., Suite 1300, Dallas, Texas 75206.

### III. JURISDICTION AND VENUE

3.1     The Court has original federal question jurisdiction of this case under Title IX of the Education Amendments of 1972, at 20 U.S.C.S. §1681 ("Title IX").

3.2     Pursuant to 28 U.S.C. §1331, the Court has original, federal question jurisdiction over all 42 U.S.C. § 1983 claims against Defendant.

3.3     Venue is proper in this Court because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in the Northern District of Texas. Venue is proper under 28 U.S.C.§1391.

### IV. BACKGROUND

4.1     When it is alleged in this complaint that CISD committed any act and/or omission, it is meant that CISD and/or its officers, principles, agents, teachers, employees, or representatives committed such act and/or omission and that, at the time, it was done with full authorization and/or ratification of CIDS or done in the normal and routine course and scope of employment of CISD and/or its officers, principles, agents, teachers, employees, or representatives.

4.2     After the 2011-12 school year, CISD, was in need of a new High School Girls' Soccer Coach. It began interviewing in May of 2012 and soon made the decision to hire Christopher Francis ("Francis") for the position.

4.3     Francis started work on August 20, 2012, in the joint position of High School Girls' Soccer Coach and Animation/Audio-Visual Instructor.

4.4     At that time, it was normal for the High School Girls' Soccer Coach to designate two players on the team to relay practice schedules and other team-related events to the remaining players on the team. Francis saw one of the players that had been designated by his predecessor coach at school shortly before school started. Francis texted her "we need to coordinate and you looked really cute today." This and other contact with Francis caused the player discomfort. She decided she would not serve during the year in the information relay role because of how uncomfortable she felt with Francis.

4.5     The first day of school for students was on August 27, 2012. Francis wanted an Office Aide to help him in the classroom. Francis requested that one of his players serve as his aide. The requested player talked with Francis and, afterwards, refused to serve as Francis' aide because Francis also made her uncomfortable. Francis then asked another player to be his aide. This player accepted, but quit after only two weeks saying she did not want to be in the same room as Francis.

4.6     By September 11, 2012, CISD, by and through Principal Jennifer Baadsgaard ("Baadsgaard"), and other employees, was aware of and investigating sexual harassment and inappropriate behavior complaints against Francis. In addition to the above-referenced problems/issues, complaints had arisen regarding a number of statements made by Francis to the team, including an announcement that players would not be wearing white soccer shorts, as they would be "too distracting" to him, and a statement that it was "hot as piss" in the indoor gym.

4.7     An informal complaint was made to the Superintendent at the time, who advised that it should be addressed with Baadsgaard. A meeting was held with at least one parent, Brandon Kidd ("Kidd"), the Athletic Director, and Baadsgaard wherein these issues were discussed. There, additional complaints were made/discussed regarding Francis' use of

profanity, his asking students to leave campus to get food and drink for him, and inappropriately texting messages to students.

4.8   Mr. Kidd began an investigation into Francis' actions. In said investigation, Francis denied the allegations against him, other than to indicate that one of his inappropriate texts was mistyped and meant for another person.

4.9   Mr. Kidd found that Francis' comments regarding the white shorts did not violate the CISD board policy.

4.10   Mr. Kidd did, however, find fault with Francis' misuse of social media with a student and use of inappropriate language. Mr. Kidd, in a written notification of findings to Francis, directed Francis to limit his use of electronic media to communicate with students to matters within the scope of his personal responsibilities and to not use profanity. The superintendent of CISD, Dr. Tim Miller, made additions to and approved the report prior to it being provided to Francis. Verbally, Mr. Kidd told Francis he was never allowed to text or interact with any student over texting or social media and he was never to be one-on-one with any student at any time. Principal Baadsgaard agrees Mr. Kidd had the authority as athletic director to implement these policies relating to Francis. Unfortunately, there were no safeguards put in place to check on Francis and his actions going forward. If CISD had followed up on Francis' text message communications with JANE and other students, it would have been in a position to observe and prevent future harm JANE and similarly situated minor females.

4.11   Mr. Kidd's findings were relayed to the above-referenced parent (the parent that had met with Ms. Baadsgaard and Mr. Kidd). She was told that a very close eye would be kept on Francis. She was assured that, when an aide was to be in a room with Francis, the two would

not be alone. She reiterated that she was concerned about females being alone with Francis at any time.

4.12   Francis then was allowed to resume his normal coaching duties and contact with the girls. Still, no measures were put in place to monitor Francis' behavior or otherwise check on whether he was following Mr. Kidd's written or verbal directives.

4.13   Over the Christmas break in 2012, JANE suffered personal losses with the deaths of a close friend and an ex-boyfriend. Francis, noticing her inattention at practice, asked what was wrong. JANE informed Francis of the losses and how they were affecting her. Thereafter, Francis began a pattern of texting JANE that would continue until his eventual arrest.

4.14   Unbeknownst to JANE, Francis was also texting and grooming other girls on the team and having inappropriate conversations with them.

4.15   In late January of 2013, Francis and the Assistant High School Girls' Soccer Coach, Coach Green, took the team to Houston to compete in a tournament. The team stayed at Comfort Inn, with the girls spread out on two different floors and one coach staying alone in a room on each floor (Coaches under CISD policy were to room together as a cost saving measure). Francis, having positioned JANE in a room directly across the hall from him, allowed and encouraged several of the girls to come into his room where he proceeded to change his pants in front of them.

4.16   Throughout the evening, Francis texted JANE a variety of things, including "I like your legs." At approximately 12:30 a.m., Francis observed JANE (then 15 years old) in the hallway on a cell phone call with her parent (who was unable to make the trip). Francis asked JANE to come to his room when done with the phone call. She did so. Francis suggested that

they watch a movie together. After the movie was over, he initiated contact and ultimately had intercourse with the 15 year old.

4.17   JANE was seen leaving Francis' room at approximately 3:30 a.m. by one or more of the other players.

4.18   Upon returning to Cleburne, Frances, who did not have teaching duties during the first period of the day, encouraged JANE to come to his classroom every morning. This resulted in JANE being late to her second period class so frequently that it caused her second period teacher to ask what she was doing and why she was being kept late. This also caused teachers and students to continually ask why JANE was always with Francis.

4.19   In February of 2013, JANE began a boyfriend/girlfriend relationship with a boy in her school. Several weeks later, Francis found out and became angry about the relationship. He told JANE that he would tell her boyfriend about their relationship if she did not breakup with her boyfriend. Many texts were sent between the two on the issue. Francis then began questioning and texting JANE's friends regarding whether she had a boyfriend. Francis would forward their responses to JANE.

4.20   Knowing JANE had a paper to complete for an agriculture class, Francis told her he would help her with a topic and the paper during his 7th period. JANE agreed and the help meetings continued over a two-week period, causing JANE to be late to her 8th period class many times.

4.21   Throughout the spring semester, Francis and JANE would hug and kiss in his room and in various locations.

4.22   In March of 2013, Francis asked JANE to come into the locker room. He made advances toward her resulting in another act of sexual intercourse between them.

4.23   In April of 2013, CISD finally decided to investigate again, after continued complaints from parents and students. JANE was told someone from the school wanted to talk to her about the relationship. She advised Francis about the contact. Francis said "let's go to the Principal and talk." Francis encouraged JANE to deny everything and to distance herself from him until the matter could blow over. JANE met with Officer Abbott at the school and, following Francis' instructions, denied all contact.

4.24   During this time frame, Francis' wife took his phone and began checking his messages. She sent another coach a text asking which player had cell phone number (XXX) XXX-XXXX. Francis then returned to school, after several days' absence, with a black eye and other injuries. He told the school authorities that there had been a confrontation at the lake where he protected his wife and children. However, he told JANE that his wife had taken a hammer to his face, broken some ribs, and smashed his phone because of the information she found on his phone.

4.25   Francis was given paid leave during the investigation into his relationship with JANE and other actions. During this time, Francis messaged JANE from his sister's Facebook account, telling her not to let anyone see his phone texts.

4.26   JANE's stepmother received an anonymous call suggesting that she check into JANE's relationship with Francis. JANE's stepmother then observed the Facebook comments referenced above. She and Jane's father confronted JANE, who denied the relationship. Jane's father took JANE's phone and saw the many inappropriate texts. After visiting with their pastor for guidance, they were directed to Detective Bagwell at the Cleburne Police Department.

4.27   At the Child Advocacy Center, JANE initially admitted to one act of sexual intercourse, while at the same time Francis admitted to multiple acts to Detective Bagwell.

JANE then admitted that there had been multiple acts of intercourse, along with other continuing actions. JANE then had a physical exam at Cooks Children's Hospital.

4.28  A school official advised the soccer team of the allegations and that Francis would be gone while the allegations were investigated. After the meeting, several other girls provided said official with inappropriate texts that they had been sent from Francis.

4.29  Francis pleaded guilty to the charges regarding JANE and was sentenced to jail time.

4.30  At all pertinent times, Defendant authorized and/or ratified the wrongful tortious acts and/or omission described herein.

4.31  JANE tried to finish out the school year but, she was subjected to many crude comments in the hallways and talk about her. She continued to suffer from these problems at school until graduation. She continues to have nightmares resulting from Francis' actions.

## V. CAUSES OF ACTION

**TITLE IX VIOLATIONS**

5.1  The preceding paragraphs are re-alleged and incorporated herein.

5.2  Plaintiff alleges that CISD, by and through the acts and omissions of the principal, athletic director and superintendent and those acting under their authority, have violated Title IX of the Education Amendments of 1972, 20 U.S.C.S. section 1681 by its deliberate and conscious indifference to the sexual abuse and discrimination to which JANE was subjected.

**42 U.S.C. §1983 VIOLATIONS;**

5.3  The preceding paragraphs are re-alleged and incorporated herein.

5.4  Defendant violated the constitutionally protected rights of substantive due process guaranteed to JANE under the Fourteenth Amendment.

5.5     These constitutional violations by local government state actors create a cause of action under 42 U.S.C. §1983, which provides that "(e)very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, any citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

5.6     Defendant is a "person" within the meaning of the statute. JANE is a citizen of the United States, and has recognized liberty and property interests within the purview of the Fourteenth Amendments to the Constitution.

5.7     Defendant's actions and/or omissions were "objectively unreasonable" and showed deliberate indifference in light of the facts and circumstances conforming them without regard to their underlying intent or motivation. Clearly, careful attention to the facts and circumstances of this particular case demonstrate the unreasonableness of Defendant's actions. Defendant failed to install, maintain and enforce the proper procedures and measures to prevent the acts in question as a matter of policy, which allowed and caused the alleged events to occur. Miller, Kidd and Baadsgaard, the de facto policy makers for CISD's School Board, also failed to act despite allegations of a pattern of inappropriate sexual behavior by Francis as set out above.

5.8     Under § 1983, CISD is liable for failing to supervise, failing to train, and/or acquiescing to unconstitutional behavior by its subordinates. CISD is liable under § 1983, as there is a causal connection between its actions and/or omissions and JANE's constitutional violations, as outlined throughout this entire pleading. CISD's supervisory failures amount to a departmental policy that violated JANE's civil rights.

5.9   Pursuant to 42 U.S.C. § 1983, the Defendant deprived JANE of the rights, privileges and immunities secured by the Fourteenth Amendment to the Constitution and laws of the United States. JANE's specific rights that were violated are set forth herein. Such rights were violated when CISD, by and through its employees, while acting with deliberate indifference toward its incumbent duty, failed to fashion properly or to execute faithfully adequate municipal policies to govern the hiring, training, supervision and discipline of teachers and/or coaches. JANE's injuries and damages were proximately caused when CISD committed the following particular acts and/or omissions:

   a.   failed to train and supervise teachers and/or coaches adequately concerning their interaction with students;

   b.   failed to train school officials regarding the proper manner in which to investigate complaints concerning teachers/coaches;

   c.   failed to train and supervise teachers and/or coaches and/or school officials regarding the proper manner for reporting suspected child abuse and/or improper relationships between a district employee and a student;

   d.   failed to adequately supervise Francis;

   e.   failed to adequately discipline Francis for his misconduct;

   f.   responded with deliberate indifference to substantial, credible evidence of misconduct arising to the level of crime; and

   g.   responded with deliberate indifference to substantial, credible evidence of misconduct arising to the level of crime and failing to follow the procedures prescribed by law and school district policy to deal with such misconduct.

5.10   Qualified good faith immunity stands for the proposition that, even though the civil rights of a complainant may have been violated, if the teacher engaged in the conduct in good faith, there is no liability for that individual. The standard by which a teacher's entitlement to good faith qualified immunity is an objective, not a subjective, one. Defendant's actions judged by such an objective standard protects "all but the plainly incompetent or those who

knowingly violate the law." The determination of objective reasonableness must be based on a version of the facts most favorable to JANE. Questions of credibility are to be resolved by the fact-finder. In the instant case, JANE alleges that Defendant is not entitled to claim qualified good faith immunity as to any claims for relief or causes of action pled in this document. Importantly, Defendant never acted in good faith of its conduct because it acted in a manner demonstrating that they were plainly incompetent and knowingly violated JANE's civil rights. Any reason given by Defendant for its unlawful actions and/or omissions does not warrant the application of qualified good faith immunity.

## VI. ATTORNEY'S FEES

6.1    Defendant's conduct as described in this complaint and the resulting damage and loss has necessitated JANE's retaining COONTZ COCHRAN. JANE is, therefore, entitled to recover from Defendant an additional sum to compensate for a reasonable fee for such attorneys' services in the preparation and prosecution of this action, as well as a reasonable fee for any and all appeals to other courts. In this regard, JANE claims entitlement to attorneys' fees and costs under the fee-shifting provisions of 42 U.S.C. §1988.

## VII. DAMAGES

7.1    WHEREFORE, JANE requests that this Court grant a jury trial and the following relief:

    a.    all money damages available for CISD's violations of Title IX, including actual damages and attorneys' fees;

    b.    all money damages available for Defendant's violations of 42 U.S.C. §1983;

    c.    attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988;

    d.    pre and post-judgment interest at the maximum rate allowed by law; and

e.     all other relief, in law or equity, to which he may be entitled.

## VIII. DEMAND FOR JURY

8.1     WHEREFORE, JANE demands a jury trial on all claims and issues.

Respectfully submitted,

COONTZ COCHRAN

/s/J. Greg Coontz
J. GREG COONTZ
State Bar No. 04770400
Email: gcoontz@coontzcochran.com
JEFF COCHRAN
State Bar No. 24001900
Email: jcochran@coontzcochran.com
217 Market Street
Burleson, Texas 76028
Telephone No.: 817-295-1195
Facsimile No.: 817-295-9444

ATTORNEYS FOR PLAINTIFF, JANE DOE

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above instrument has been mailed, telecopied, or hand delivered to all attorneys of record, in compliance with Rule 5 of the Federal Rules of Civil Procedure, on this the 14th day of October, 2015.

Thomas P. Brandt
tbrandt@fhmbk.com
Lead Counsel
Joshua A. Skinner
jskinner@fhmbk.com
Nichole M. Plagens
nplagens@fhmbk.com
Fanning Harper Martinson Brandt & Kutchin, P.C.
Two Energy Square
4849 Greenville Ave., Suite 1300
Dallas, Texas 75206

/s/J. Greg Coontz
J. GREG COONTZ